IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LOIS THOMAS                          §
    TDCJ-CID #232641             §
V.                                   §           C.A. NO. C-04-619
                                     §
MAXIMILLIANO HERRERA, ET AL.         §

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983, asserting claims of deliberate indifference to his serious medical needs (D.E. 1). Defendant Dr. Maximilliano Herrera moves for summary judgment to dismiss plaintiff's claims (D.E. 41). Plaintiff has filed a response in opposition (D.E.42, 43). For the reasons stated herein, defendant's motion for summary judgment is granted, and plaintiff's claims are dismissed on the merits.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 18, 19), this case was referred to the undersigned to conduct all further proceedings, including entry of final judgment (D.E.26).

## II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at the Clements Unit in Amarillo, Texas. On the dates of the incidents at issue, plaintiff was incarcerated at the McConnell Unit in Beeville, Texas. Following a February 23, 2005 Spears hearing, service was ordered on defendant Dr. Maximilliano Herrera. See D.E. 14. Plaintiff's claims against the second defendant, Owen Murray, were dismissed for failure to exhaust (D.E.36).

In his *pro se* complaint (D.E. 1) and supplement to complaint (D.E. 25), plaintiff alleges that, for the three months prior to his filing suit, Dr. Herrera repeatedly refused to treat him for his serious medical problems. Plaintiff is an insulin dependent diabetic, and he claims that his foot and leg are

constantly swollen and painful, and that his condition is getting worse.   He seeks injunctive relief and monetary damages.

### III.  SUMMARY JUDGMENT EVIDENCE
### AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the affidavit of Dr. Herrera, Exhibit A, and a copy of plaintiff's medical records, Exhibit B.   See D.E. 41, Exs. A and B.      The following facts are not in dispute:

Plaintiff had been assigned to the McConnell Unit since 2001.   Herrera Aff't at ¶ 5.   He has been diagnosed with the chronic conditions of  Dependent Diabetes Mellitus, Hypertension, and Hepatitis C.   Herrera Aff't at ¶5.   Because of his diabetes, plaintiff requires daily insulin injections. See Ex. B at 2-23  (copies of plaintiff's TDCJ Health Services Diabetic Flow Sheets from January 4, 2004 through January 17, 2005).   In addition, his blood sugar level (glucose) is measured often. Id.

On February 10, 2004, plaintiff was seen by Dr. Herrera complaining of arthritic pain throughout his body.   Ex. B at 35.   Dr. Herrera proscribed an anti-inflammatory pain medication, Naprosyn.  Id.

Plaintiff routinely had finger-sticks to measure his blood glucose levels.   Ex. B at 2-23.   On February 14, 17, 23, and 24, 2004, plaintiff's glucose level was high, sometimes above 300.[1]  Ex. B at 36-39. On February 28, 2004, plaintiff refused the fingerstick. Ex. B at 39.   On March 4, 9, 12, and 15, 2004, his glucose level was high.  Ex. B at 41-46.

On April 21, 2004, plaintiff submitted a sick call request (SCR) complaining of sores between his toes. Ex. B at 100.  Plaintiff was scheduled to see a physician's assistant (PA) on April 27, 2004;

---

[1] The normal range is 60 - 120 mg/dL.

however, plaintiff signed a "Refusal of Treatment or Services" indicating that he did not want to be seen by a PA.  Ex. B at 46-47, 100.  Despite plaintiff's failure to show, Dr. Herrera prescribed Clotrimazole for plaintiff's toe infection.  Ex. B at 47.

On May 14, 2004, plaintiff again refused to be seen by a PA.  Ex. B at 102.  On May 20, 2004, plaintiff was scheduled to be seen in the infirmary, but he refused to come.  Ex. B at 48 and 103.  On May 21, 2004, plaintiff refused his regular insulin.  Ex. B at 104.     On May 25, 2004, plaintiff reported to the infirmary for a scheduled appointment.  Ex. B at 49 and 105.  Plaintiff left without being seen.  Id.  On May 26, 2004, plaintiff refused a fingerstick to test his glucose and refused his insulin.  Ex. B at 106.  On June 10, 2004, plaintiff refused his insulin.  Ex. B at 107, 108.

On June 23, 2004, plaintiff refused treatment stating that he had been seen by Dr. Herrera the day before and had received his medications.[2]  Ex. B at 109.

On July 15, 2004, plaintiff was scheduled to be seen in the infirmary.  Ex. B at 50.  Plaintiff refused the appointment.  Id.  On July 22, 2004, plaintiff was again scheduled to be seen in the infirmary, but he refused to come.  Ex. B at 51, 110.  Notes indicate that no future appointments were to be scheduled unless plaintiff submitted a sick call request (SCR).  Id.

On July 27, 2004, plaintiff was seen in the infirmary complaining of jock itch and requesting medical shoes.  Ex. B at 53.  Lab work indicated that plaintiff's glucose was high at 273.  Ex. B at 52.  Upon examination, Dr. Herrera noted that plaintiff had overgrown toenails, with no other visible lesions on his feet.  Ex. B at 53.  Plaintiff also had hyperpigmented scaly areas at the inguinal areas.  Id.  Dr. Herrera's plan was to have plaintiff's toenails cut and trimmed, and he prescribed Clotrimazole.  Id.  It was noted that plaintiff was still taking Naprosyn for his arthritic pain.  Id.

---

[2] There is no medical record of plaintiff having seen Dr. Herrera on June 22, 2004.

On July 31 and August 2, 2004, plaintiff's glucose level was within normal range.  Ex. B at 55, 57.  On August 4, 5, 9, 10, 13, and 14, 2005, plaintiff's glucose was high.  Ex. B at 58-65.

On August 16, 2004, plaintiff submitted a SCR complaining that his feet were swollen and painful, with "blood sores."  Ex. B at 66.  Plaintiff also complained that he was being forced to wear work boots that caused him pain.  Id.  Plaintiff was scheduled for a medical appointment the next day. Id.

On August 16, 17, 19, 23, and 24, plaintiff's glucose reading was high.  Ex. B at 67-74.  On August 25, 2004, Dr. Herrera counseled plaintiff about diet and exercise to help control his diabetes. Ex. B at 77.  Plaintiff's glucose level that day was within normal range at 97.  Ex. B at 76.  On August 29, 2004, plaintiff's glucose level was again above normal.  Ex. B at 78.

On September 8, 2004, plaintiff had an appointment scheduled with the PA for medication renewal, jock itch, feet, and complaints of dizziness and vomiting; however, he refused treatment that day.  Ex. B at 111.

Three months before filing suit, plaintiff filed thirteen (13) SCRs to see Dr. Herrera.  See D.E. 1, Ex. C-38, C-40 through C-49, and Ex. B-1.   Specifically, these SRCs were filed on October 7, 11, 17, 19, 23, 26, 29, 31, and November 2, 4, and 15, 2004.  Id.  Plaintiff did not receive a reply to these SRCs.  Id.

On November 29 and 30, and December 1 and 2, 2004, plaintiff's glucose level was high.  Ex. B at 76-85.  On December 3, plaintiff's blood sugar was within the normal range, Ex. B at 86, but two days later it was high again.  Ex. B at 87.

On January 5, 2005, plaintiff's glucose reading was 266.  Ex. B at 88.  It was high again on January 11 and 12, 2005.  Ex. B at 89-91.  On January 29, 2004, plaintiff refused his lab work and his scheduled appointment with a PA.  Ex. B at 92-94.  Plaintiff's appointment was rescheduled for the next day, but he refused again to come.  Ex. B at 95.

On March 17, 2005, plaintiff refused to be seen by a PA.  Ex. B at 98.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses.  See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus.

5

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party

cannot rest on the mere allegations of the pleadings.  FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-

49.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no

reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d

at 451.  "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be

directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether

the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law

will identify which facts are material.  Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477

U.S. at 248.

## V. DISCUSSION

**A.     Official capacity claims and injunctive relief.**

Plaintiff has sued defendant in his official capacity and individual capacity.  He seeks

monetary damages and  prospective injunctive relief ordering Dr. Herrera to prescribe him the

medication he needs "before [he] loses his legs" and 'to stop the pain." D.E. 1 at 4.

A suit against a prison employee in his official capacity is the same as a suit against the entity

the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment

bars a suit for money damages against a state or state agency.  Seminole Tribe of Florida v. Florida,

517 U.S. 44 (1996).  A judgment may not be entered against a state officer in his official capacity for

violating federal law in the past.  Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,

506 U.S. 139, 146 (1993).

To the extent plaintiff is suing Dr. Herrera in his official capacity for money damages, those

claims are barred by the Eleventh Amendment, and they are dismissed.

A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or state entity, where the relief sought is injunctive in nature and prospective in effect.  Kentucky, 473 U.S. at 166 (citing Ex parte Young, 209 U.S. 123 (1980)).  In order to state an injunctive relief claim, a plaintiff generally must assert that a policy or custom of the governmental entity played a part in the violation of federal law.  Id.  The entity itself must have been a "moving force' behind the deprivation.  Id.

Plaintiff does not assert that a TDCJ policy or custom was the moving force behind the alleged unconstitutional conduct.  Thus, he fails to state properly a claim for injunctive relief.  Moreover, even if plaintiff had pled properly a claim for injunctive relief, his request that the Court order Dr. Herrera to prescribe him medication is moot because plaintiff is no longer housed at the McConnell Unit.  See Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998).  Because  plaintiff is no longer under Dr. Herrera's care, is claim for injunctive relief is moot and is denied as such.

**B.    Deliberate indifference.**

Plaintiff claims that Dr. Herrera was deliberately indifferent to his serious medical needs because he ignored his sick call requests, denied him proper pain medication, and failed to see him personally, instead referring him to a PA.  In addition, plaintiff complains that Dr. herrera failed to prescribe him special work boots.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 303.(1991);  Estelle v. Gamble, 429 U.S. 97, 105 (1976);  Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).  Deliberate indifference encompasses more than mere negligence on the part of prison officials.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act.

7

Farmer, 511 U.S. at 837.  Furthermore, negligent medical care does not constitute a valid § 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  See also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim").  As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).  Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered.  See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321.  "Deliberate indifference is an "extremely high standard to meet."  Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The uncontroverted evidence in this case establishes that Dr. Herrera was not deliberately indifferent to plaintiff's serious medical needs.   Upon his entering the TDCJ-CID system, plaintiff's medical history was taken and the medical staff were aware of his diabetes, hypertension, and Hepatitis C.  Herrera Aff't at ¶ 5.  The TDCJ Diabetic Flow Sheets establish that plaintiff receives insulin injections twice a day for his diabetes by medical staff.  Ex. B 2-23.  Plaintiff's glucose level was monitored and recorded daily.  Id.  Medical records of sick calls, examinations, diagnoses and medications can rebut an inmate's allegations of deliberate indifference.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

Dr. Herrera diagnosed and treated plaintiff on numerous occasions. Ex. B at 35, 109, 53.  For example, Dr. Herrera saw plaintiff on February 10, 2004, for plaintiff's complaints of arthritic pain and prescribed him Naprosyn.  Ex. B at 35.  On April 21, 2004, Dr. Herrera prescribed medication for plaintiff's toes.  Ex. B at 47.  On July 27, 2004, Dr. Herrera treated plaintiff for jock itch and overgrown toenails.  Ex. B at 53.

Plaintiff's medical records indicate that plaintiff repeatedly refused treatment.  See Ex. B at 39, 46-47, 48, 102, 103, 104, 49, 105, 106, 107, 108, 50, 111.  Indeed, Dr. Herrera testified that plaintiff refused to appear for scheduled treatment on over 75 documented occasions.  Herrera Aff't at 7.  Plaintiff does not disagree with this representation. See D.E. 42.  Often, plaintiff would refuse treatment because he wanted to be seen by Dr. Herrera and not a PA.  See Ex. B, *supra*.  However, the fact that plaintiff preferred to be seen by Dr. Herrera but was not able to do so does not state a constitutional violation.  Banuelos, 41 F.3d at 235 (mere disagreement with course of treatment does not state a constitutional violation).  Dr. Herrera testified that  he is the Cluster Medical Director for the South Texas Cluster and he provides medical care to inmates at other units besides McConnell.  Herrera Aff't at ¶  4.  As such, he is not always at the McConnell Unit.  Id.   However, there are four PAs and nursing personnel at the Unit that are available to respond to plaintiff's medical needs.  Id. Moreover, Dr. Herrera is available for emergencies and consultations at all times.  Id.  The fact that plaintiff wanted Dr. Herrera to treat him personally rather than be seen by a PA or nurse is merely a disagreement with the course of treatment received, and is not actionable.  Banuelos, *supra*.

Plaintiff also complains that Dr. Herrera refused to prescribe him special work boots. However, Dr. Herrera states:

> Mr. Thomas' most recurrent complaints involve his perception of a need for special boots or shoes.  In my opinion, he does not require special, orthopedic type medical shoes.

Herrera Aff't at ¶ 8.

Again, plaintiff's claim regarding shoes is no more than a disagreement with the treatment he received and is not actionable.  Indeed, even if plaintiff could establish that orthopedic boots were appropriate, his claim would amount to no more than negligence, which is not actionable. Domino, 239 F.3d at 756 (incorrect diagnosis not actionable).

Plaintiff complained that he was receiving "no medical at all," and that proper medical treatment was being delayed.  D.E. 1 at 4.  However, plaintiff's medical records show that his SCRs were answered, appointments were scheduled, he was seen by medical staff and diagnoses were made, and medications were prescribed.   This evidence rebuts plaintiff's allegations of deliberate indifference.  Banuelos, 41 F.3d at 235.  Moreover, plaintiff does not allege that he suffered serious injury or harm as a result of Dr. Herrera's actions or inactions.  See Stewart v. Murphey, 174 F.3d 530, 537 (5th Cir. 1990) (delay in treatment actionable only if there is deliberate indifference *and* delay results in substantial harm).  Here, plaintiff's Hepatitis C is not currently active.  Herrera Aff't at ¶ 6.  His hypertension and diabetes are only partially controlled in part due to plaintiff's own noncompliance with prescribed diet and medication.  Herrera Aff't at ¶ 6.  However, plaintiff does not allege that he has suffered serious injury or harm or that he is at risk of such harm.

Plaintiff claims that his sick call request were ignored and that he was denied access to medical care; however,  plaintiff's SCRs were answered frequently and appointments were scheduled. Ex. B.  The fact that plaintiff routinely wrote SCRs complaining about his care does not refute his medical records that care was provided.  Plaintiff 's bald, conclusory allegations are insufficient to support a substantive constitutional claim.   Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990).

Plaintiff's medical records evidence that his sick call request were answered, he was routinely examined,  diagnoses were made, and  medications prescribed.  This evidence rebuts plaintiff's allegations of deliberate indifference.  Banuelos, 41 F.3d at 235.  Dr. Herrera is entitled to summary judgment in his favor.

## VI.  CONCLUSION

Plaintiff fails to establish that there exists a genuine issue of material fact regarding his claims of deliberate indifference, and Dr. Herrera has established that he is entitled to summary judgment as

10

a matter of law.   Accordingly, defendant's motion for summary judgment (D.E. 41) is granted and plaintiff's claims against Dr. Herrera are dismissed with prejudice.

ORDERED this 6th day of December, 2005.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

11